On the second case of the morning, call 210-0647, Randy Muchach v. Board of Fire and Police Commissioners of the Village of Oak Brook and Chief Kamishian in his capacity with the Village. On behalf of the Apologist Jerome Marconi, on behalf of the Epilegist John Murphy. Gentlemen, are both sides ready to proceed? When you are proceeding, you're ready. Thank you. Good morning and may it please the court. The case before you today is actually three separate claims, three separate cases. Today I'm going to try to elaborate a little bit on the arguments that are in my briefs. I'm going to start with the legal issue that was ruled upon in the 2615 motion under the defamation claim. As you know, the trial court dismissed Mr. Muchach's defamation claim under the innocent construction rule. And I think in order to analyze the innocent construction rule, we obviously have to look at the statement we're talking about first. That statement, which is in the papers, and I'm just going to cite it again. Oak Brook Police Chief Thomas Sheehan said allegations involving child pornography were brought to light after Oak Brook resident Terrence O'Malley filed a suit against Muchach. In the suit, O'Malley alleges that Muchach used O'Malley's online identity to purchase pornography. One of the computer files cited in the case was a 16-year-old girl in sexual poses, Sheehan said. In the complaint, in reality, these statements are absolutely false. There was never any allegation of child pornography. Terrence O'Malley never alleged that Muchach possessed child pornography. In the complaint, and in reality, Terrence O'Malley admitted in some requests of admits he had no knowledge that Muchach even possessed pornography. And we have the O'Malley complaint in this record, correct? Correct. I believe so, yes. Well, if we don't, how are we going to know that? I think for purposes of this motion, you have to look at Muchach's complaint and the allegations contained in there. I don't believe that Sheehan ever presented the O'Malley complaint in its motions to show what was in there and what was not in there. I can tell you that Muchach did allege that it was contained nowhere in O'Malley's complaint. Well, what did O'Malley, as I understand it, file a federal lawsuit against your client, correct? Correct. And he was alleging something about your client allegedly somehow obtained Mr. O'Malley's online identity. What were the allegations in the federal lawsuit regarding that and regarding this 16-year-old girl? What was said about that in the federal lawsuit? Looking at the O'Malley complaint, I didn't see anything in there about O'Malley saying anything about a 16-year-old girl. Anything. So what was the basis of the lawsuit? The basis of the lawsuit was O'Malley, and again, I wasn't involved in this, so I'm not 100 percent. I've seen it. I've read it. Basically that Muchach was harassing him. He ordered some magazines. He ordered some online music. He ordered some online pornography. Those are the allegations I remember. I also remember receiving the request to admit that were filed in that federal lawsuit where O'Malley said, I don't have any personal knowledge of any of that. I understand that. The merits are separate from this issue. Right. So the lawsuit alleges that allegedly a client used his identity to order some pornography. That's correct. That's in the lawsuit. That's correct. So now you're taking issue with the phrase child pornography, or what specifically? Right. I mean, I think there's a difference between if someone is possessing pornography, that's not illegal. That's not a crime. But when you say that a sergeant in a police department is possessing, if you say anyone is possessing child pornography, I mean, that's on the same level as murder, rape, armed robbery. I mean, that is a heinous offense in the eyes of most. So where do you go from, if the complaint says that Mucha uses online identity to purchase pornography, how do you get to child pornography? You get there because sheened in order to dress it up and in his quest to get Randy Mucha made up this child pornography. Was there any computer files mentioned in the lawsuit that involved a 16-year-old girl in sexual poses? The only thing I vaguely remember is there's something about a search string, and it didn't come from O'Malley's allegations. It was like a search string that had a bunch of things linked together, and one of them might have said 16-year-old. But there was no pictures, photographs, images, anything like that. And, again, I don't think that that's coming from the O'Malley allegations. What about the argument that I'm sure we're going to get into, and this is commonly used, and I believe that sheen used this phrase, he was describing this as allegations, the buzzword allegations. He didn't say the officer committed. There was allegations of this. Does that bear on the innocent construction role, where he is not accusing the officer, he's going to say, I'm sure, personally. He's saying these are allegations that came to light. If there were allegations, I could see where that would be a decent argument, even though that would still be defamation, is republishing it. But then that would be a different issue because you're talking about the fair report privilege, where I'm taking something out of a public document and I'm repeating it. I think if you dress up a statement and say there's allegations of, or it's my opinion that he possessed child pornography, that doesn't take it out of the defamation realm. I think there's some U.S. Supreme Court cases where you can't hide behind words such as in my opinion. I didn't find any cases that said there are allegations. But common sense would be if I'm saying, well, you know, he's a murderer, or hey, I heard there's allegations that he's a murderer or a rapist, when I've never heard of any of the allegations, I think that's still defamation. You're still putting it out there to the public that Randy Butch is a child pornographer. And if you look at the Tewitt case and think about that, the Tewitt case, they never came out and accused Patrick Tewitt of doing anything illegal or unethical. What they said was he gave a million-dollar retainer, or Iupa gave a million-dollar retainer, and in this book they said that they thought it was a done deal. And looking at the context of everything, the Supreme Court said, well, what you can take away from that is, is he's paying off judges to get these mobsters off. But you mean the arguments over the same arguments before the trial judge, correct? Yes. Obviously that the innocent construction rule, I assume you argue, did not apply. It just doesn't apply here, and even in the motion for reconsideration. When did the trial judge specifically rule in response to your argument that the innocent construction rule did not apply? The trial court said that she agreed with Mr. Murphy's argument that in the context of everything and the fact that there's the Malley lawsuit, that this statement can be innocently construed. And what I was trying to flesh out is, in going to the Green case, which I think came out of the Second District, how do you innocently construe the worst child pornography? Because in Green they were looking at, I believe, misconduct and abuse, and those aren't necessarily criminal acts. So the Supreme Court was looking at those words. But when you look at the words child pornography, how do you innocently construe those words? How do you give allegations of child pornography an innocent meaning? Well, you can make a strong argument you wouldn't or couldn't unless you're saying that the federal lawsuit, quote-unquote, involved, let's not leave that word out, involved allegations in some way of child pornography. So that's really the crux of it. Did the federal lawsuit in some way involve, quote-unquote, child pornography allegations? Yeah, but I still don't think that that's an innocent construction issue. I think that's a fair report privilege issue, where you're repeating that there's something going on in this federal lawsuit, that there's allegations of child pornography. Because let's assume O'Malley alleged that in the suit, and he said, you two possess child pornography. That's defamation. So now the issue becomes, did Sheehan republish that? Well, it's defamation once it's true. Right, right. And it's not true. Right. I'm suggesting it is. Right. So if it's not true, then O'Malley defamed him. There's defamation. And then Sheehan republishes the defamation. I think in the Mismer case, which is, I think it's an 09 case where Bob Clifford was sued, it talks about republication. And that the person who republishes it is just as liable as the person who originated it. So if a lawsuit says this, it's a public record, and somebody repeats what's in the lawsuit, and says there's allegations in this lawsuit, that's defamatory. If you use the phrase, this lawsuit alleges this against somebody. Then I think you'd come with, under the fair report privilege, where it's protected. So did the trial judge get it right for the wrong reasons? I'm sure it's not your position, but what's the difference? I think the difference in this case is that O'Malley never alleged that Mucich possessed child pornography. So there's another, I think, again, it's in the Mismer case, where you can abuse the privilege by mischaracterizing an allegation in a pleading. And that's exactly, and I think that's in the Solaria technology case at 221 Ill Second 559. So if you mischaracterize, you're going to lose that privilege. So if you go from an allegation that says that Mucich used O'Malley's online identification to purchase pornography, that's a lot different than there's allegations of child pornography. So we would be arguing a different issue. But did the trial judge look at that and say, all right, Mr. O'Malley says that your client used my name to purchase pornography, and then the lawsuit indicates through the attachments, I assume, a reference to a 16-year-old. Is that just putting two and two together? The trial court never went that deep into it. And, again, I mean, basically they're talking about the O'Malley lawsuit, and I think she was making this context argument. You know, in the context of the lawsuit, it's okay, or the fact that there's allegations of child pornography can be innocently construed. And I kept trying to narrow the focus on, well, how do you innocently construe those words? You know, I just think she was confusing the different defenses that could be used in a defamation case. Well, essentially you wanted the trial judge, and I think you are asking us here today to create some sort of a bright line that the child pornography, domestic abuse, domestic violence, stalking, I mean, those would all fit sort of in these public problems that we're facing these days. These are hot buttons, and you can't innocently construe them if you want a bright line. Right. You're accusing somebody of a crime, and like Green v. Rogers, there was that wiggle room there. There was what does misconduct mean? What does abuse mean? Is it child abuse? Is it physical abuse? Is it sexual abuse? And that's what the Supreme Court focused on is can you give the word different meanings? And that's the same thing with to it, too. I mean, when you say it's a done deal, now, to me, that doesn't necessarily mean you're paying off a judge, but the Supreme Court said that could be a reasonable meaning to they thought it was a done deal. So I just think this is a bright line. This is a crime, child pornography, and that's why I think the trial court was wrong to dismiss it without even getting to any discovery. Counsel, we're interested in hearing your additional arguments aside from the defamation about the board's finding that resulted in the dismissal of your client on the allegations he misled or committed perjury in the proceedings regarding the name Linda Lucinda. What's your argument on that? I think the chronology is important. May 15, 2006, Randy gives a deposition in the civil case. It says he goes on for seven and a half hours. He gets done with the debt. They ask him who Linda Lucinda was. He said he didn't know. He goes back, goes through his records, calls his attorney, Mr. Giano, and says, you know what? I screwed up. I used this Linda Lucinda. Mr. Giano then starts the wheels in motion to prepare this amended deposition testimony and amended answers to interrogatories, which then, and it's in the record, are circulated with a proof of service in July. So all the attorneys of record get this document where Randy basically says, I am Linda Lucinda. At some point, they say, well, no, Randy needs to sign these. And I think the record is pretty clear that this Kara Lundy faxes him the two signature sheets. Randy takes them, goes to the currency exchange. There's a fax confirmation on the top that says August 10th. He then faxes them back. Now, fast forward. So now Sheehan has all this. He's got the deposition testimony. He's got the amended answers. He's got everything. If Sheehan thinks that there's a problem or misconduct or Randy committed perjury, he never brought these charges. He never bothered to talk to Randy, never bothered to interrogate him. April 23rd, now we're at this hearing. Randy, and I'm representing Randy now, we're defending these 18 various charges that are brought against him. All of a sudden, out of the blue, here comes the deposition transcript, and here comes these sworn answers. Randy has never seen them because they were never given to him first before they were circulated. And I think at that point, I object and said, look, I'm not his attorney in the civil lawsuit. Randy hasn't seen them. It has no relevance whatsoever to any of the charges. I didn't know who Linda Lucinda was. And I think fundamental fairness, if you're going to bring an allegation against someone, give them 10 minutes. Give them some time. But Randy then began to get very cautious, and we began that again with, I don't recall, I neither admit it nor do I deny it. Show me the document. Aside from the chief's allegations of the behavior of the chief, put yourself in the position of the board hearing this. Okay. The correction in deposition wasn't a typographical error. I mean, there was an allegation, a certificate saying that it's true in substance and in fact, and setting aside that he was confused over what he was certifying. Then, here he is later, a few months later at the hearing, and he doesn't remember being Linda Lucinda, but he says he was Linda Lucinda in the deposition. Isn't the board going to be troubled by that? Well, the dialogue between the attorney was, I believe Randy says, I neither admit it nor do I deny it. Because he's sitting there now, and what the sheen has brought out in the briefs is that he's subject to personal liability, punitive damages, and here we have cross-examination on something that has nothing to do with the charges before the board. Now, the board, again, remember, the board did hear this testimony, and they couldn't have been that troubled by it because they gave him a 30-day suspension. I mean, all this is before the board, and I think it's very important to note that Randy, not for one day, one minute, with this document in front of him says that this is untrue. Randy came forward, he corrected it, and he stood by it, and he stands by it to this day. Not once did he ever deny that he was Linda Lucinda, which raises a question. When you read the record, who is Linda Lucinda? What did she do? What did she say? How did it relate to the lawsuit? How did it relate to the police department? There's not a shred of evidence, nothing, put in by the chief as to who Linda Lucinda was and what Linda Lucinda has to do with anything. All right, so you're saying basically then I suppose you're making the argument that what barrier does this have in his work as a police officer? Is that sort of what you're saying? So a 20-year veteran, second in command in the police department until she gets in there, what does Linda Lucinda have to do with his police work? And why is it brought up as he's sitting in the hot seat getting cross-examined, fighting for his career, and all of a sudden it's like, whoa, where is this coming from? And I'm standing there going, whoa, I don't even have this stuff. They sat on it. It was an ambush. And then Randy got cagey. I don't know. Show it to me. I don't know. I mean, it's normal in depositions. You're overly cautious. If I wrote that, I wrote it. So, look, what we have from the original, we have the deposition and the amended deposition now before the police and fire board. Again, I ask the question, do we have the lawsuit, the allegations of the lawsuit from whence this deposition came? No, that's what I argued in my brief. I mean, if you're a Sheehan and you're prosecuting Muchen, you want him fired for whatever is going on, you don't attach a newspaper article that wasn't ever brought out in the hearing. Put in some evidence that Muchen did something by sending this e-mail. And who is Linda Lucinda? I mean, everybody has crazy e-mail addresses. You might have five of them and everybody thinks of cute little names. I don't know what Linda Lucinda has to do with anything. Well, assuming that it was asked in the first, in that first series of depositions, and from our record here, it doesn't look like there were objections to those. There must have been some allegation about Linda Lucinda in that first lawsuit. I mean, that's a presumption, but we don't have any proof. Yeah, and I had absolutely nothing. I never read the complaint in the first lawsuit. I came in to do the discipline. That's where I came in. What happened in the federal lawsuit, I have no idea. And it wasn't important to me when I prepared Randy for the numerous charges that she had brought against him. And apparently the board heard his testimony, the board heard about his background, the board heard everything. It gave him a 30-day suspension. Well, they gave him a 30-day suspension on the charges that were pending. This was not a charge that was pending. I'm assuming, although I don't want to make an argument for your opposing counsel, that this was brought up during the course of this hearing to question his credibility generally. It didn't become an issue until that second hearing. I disagree with that. I don't think you're testing someone's credibility by coming low to bear with marked exhibits that you never tendered to the other side. And I think it was more than that. I mean, I think they really wanted to nail him, and this was an opportunity. But he wasn't charged, so how could they nail him at that point? He wasn't charged with that allegation. Nail him, make him, expose him in the civil lawsuit. We're going to get you to admit that you used this Linda Lucinda name so we can – because the civil attorneys are the plaintiffs' attorneys who are sitting at the hearing. So we'll beat you up. They're working with the chief. They want to hurt him. So then they bring in all this information. And he's standing there in a chair in a room. His civil attorney wasn't there. I had no idea what was going on. I had no idea who Linda Lucinda was. All I could do was object and say it's not relevant to any of the charges. And they didn't even go on that. They said, well, we'll take another advisement. Keep going. And it was never ruled upon. My objection was never ruled upon. I just think it's fundamentally unfair to take a conduct that happened years before and then because you don't get the result you wanted, the termination, we're going to dredge it up again after. Because otherwise, is a disciplinary hearing ever going to stop if you have several charges against an officer? Why not just one at a time, just keep right on going until the board gets the hint? Counsel, you have a chance for a reply. Thank you very much. I'm going to release the court and closing counsel, John Murphy. Your Honor, I can go either way if it makes more sense for me to pick up on the termination claim first and then go back to defamation. Right. Why don't we start with that? Because what we're talking about is a police officer who lies under oath. First sworn statements in a deposition. So that's May of 2006. Lawsuit filed by this Gake family. Mucha is being sued as a police officer in Oprah relating to this Internet identity business. Are you Linda Lucinda? No, I'm not. Three or four months later, that's May of 2006. Three or four months later, now we get to the summer of 2006 in the lawsuit. Mucha recants. Oh, I am Linda Lucinda. And as to 14 other questions, I take the Fifth Amendment. I make that point, Your Honor, to indicate that this was had to be a memorable event for somebody who's being sued in a federal civil rights action. Who takes the extraordinary step of coming clean as the Linda Lucinda, but then taking the Fifth Amendment, which is his right, as to a number of other things. So this is something that's in the record. The opposing counsel's explanation is, yeah, he can't deny that he's certified. He amended the deposition testimony. But there was some confusion. The lawyer faxed it over to him, faxed over the certification. He didn't realize that he was certified to it. How do you respond to that allegation? That was a matter that the commission was entitled to disbelieve because the amended deposition answers had his oath that I read it and it's true. And when you link, Your Honor, the yes, I am Linda Lucinda with taking the Fifth Amendment 14 times, a commission, a fact-finding body could find that Mucha's explanation that with a lot on the line, I didn't bother to read my amended deposition testimony was not worthy of belief. But now we're using this deposition testimony and the amended deposition testimony in a hearing before the police and fire board that relates to 10 or 15 other charges. Where does that come from? That takes us to hearing number one. Right. Hearing number one, we have to keep in mind one thing. This is April of 07. The gate lawsuit, the federal civil rights case that he was worried about, had been settled six months earlier. So this was not a case where Mucha froze because I was afraid it's going to hurt me in the gate lawsuit. That case is over. But before you get to the fact that the case is over, why is it now introduced in hearing number one? To be honest, it was introduced by the attorney for the chief in that hearing for credibility purposes. To demonstrate that this police officer, whose credibility is being challenged in the hearing, has previously lied under oath. I mean, it's a form of attempted impeachment where credibility is an issue that was admitted into evidence. So we have an attempted impeachment use. Mucha, again under oath, says, I'm not Linda Lucinda. I don't remember. I neither admit nor deny. The commission was entitled to disbelieve that. This was not a three-year or four-year time span. It's like seven or eight months. And a very, very unusual set of circumstances with the name, with the computer, with the litigation, and with the pending charges. Well, if now, now let's go back to the fact that you say the lawsuit, the federal lawsuits that brought by the Gakes has been resolved, settled. Why, then, are the lawyers who were representing the Gakes at the hearing? Because counsel said that the civil attorneys were there, you know, working with Chief Sheehan. I don't know why the Gakes were there, but they were represent, the chief was represented by a lawyer named Kansky from Klein, Thorpe & Jenkins, who was not involved in anything. So, so it's a public meeting, first of all. Well, they could be there. Why were their attorneys there? Because there was other litigation pending by the Gakes against Oak Brook officials. It was still hot. But not against Mr. Officer Major Persman? No, it was against other, a prosecutor who, there was a later federal trial. The whole thing's a big mess. But there was still action involving the Gakes against Oak Brook officials. So that is likely the reason it piqued their curiosity. So, so to say that I froze and therefore I hid the truth is not acceptable. Or the commission could conclude that that's not acceptable. When you put the hand up and say you're going to tell the truth, you tell the truth. And hearing number two is, let's see, the first one's in April? Deposition, May of 06. Okay. Recanting is July, August of 06. Hearing one is April of 07, six or seven months later. Hearing two is July of 07. So really, from the time Mucha had the epiphany of, yes, I am Linda Lucinda, if that's to be believed, we're talking less than a year. As to those facts, a reasonable fact-finding body could find that this man lied under oath. You pick the occasion. The deposition, the sworn deposition answer is hearing one, hearing two. But there's only one single charge in the July hearing, and that was that he lied under oath at the April hearing. At the April hearing and in his, and in the deposition, in the civil litigation deposition. So certainly there are enough facts to justify termination of employment or the finding of the commission that this man lied under oath. So part two, is it important for police officers to tell the truth under oath? And is it permissible for a police officer who, where there is a finding of falsehood under oath, to be terminated? And that is an easy case. Your honors, I, you know, did the homework last weekend, or over the weekend on, you know, Shepard. We call it Shepard, I just think people are westlocking. Westlocking. So you're telling us you worked on it over the weekend? I'm telling the client. But I just want to mention, I'll do it formally, that there's a new appellate decision from the first district that reiterates this point that when a police officer lies under oath, a civil service commission, a fire and police commission, is within its rights. It's called Rodriguez v. Weiss, Joni Weiss, Weiss, excuse me. And that's 2011 Westlaw 1227822. Are you asking to supplement the record with that authority? I will make that, I will make that motion. We do by letter, I guess. So I think in terms of normal deference to administrative agencies, we have a body that finds that a police officer lied under oath regarding a matter of significance. Let me pause for a second because there's a little bit of artificiality here in terms of why was Linda Lucinda important. It is true that there was nothing in the record saying specifically Linda Lucinda was important because of X, Y, Z. Everybody in the room knew that. But let me just back up one second. There's no categories of telling the truth when you're a police officer under oath. You don't get mulligans. You can't pick and choose as to what's an important matter to lie about under oath. So to the extent there is that gap in the record, Your Honor, about what Mucha was doing with the Internet and the computer, I would respectfully submit that it doesn't matter because lying under oath is lying under oath. Unacceptable. So that's your argument as to why you're answering counsel's argument. How does this bear on his responsibilities as a police officer? Yes. And if the court has any anecdotal interest in the reason for it, let me give you the Seventh Circuit citation of the opinion where the Seventh Circuit upheld the arrest of Mucha. And it gives the whole story of Linda Lucinda. We've got computers, too. That's New York's record. But, yes, Your Honor, my response to that is that lying under oath when you're a police officer, society's witness, is never acceptable. What about the defamation allegations and Chief Sheehan's role in this? I would ask the court, if you've got my brief, if you've got Exhibit A, that's the article. I think it would help if we look at the article. Your Honor, in response to your question, the O'Malley lawsuit complaint is not part of this record. Plaintiff chose to litigate his defamation claim without attaching the O'Malley lawsuit to his complaint. And so then we turn to what the chief said. Your Honor, I know I've looked at the article. It's a big headline about Mucha's under investigation yet again. Grand jury investigates police sergeant. And the story starts to talk about how the grand jury's investigating him, how the gate case was settled for $2 million, how there's other litigation pending. And then Sheehan says that allegations came to light regarding child pornography after this lawsuit was filed. So Sheehan then says this came to light. I contacted the state's attorney and I gave it to them to investigate. Now, I don't think that there's a, under the law, necessarily a hierarchy in terms of what might be the hot button crimes of the day in terms of defamation per se. But in terms of Judge Wheaton's ruling on reasonable construction, what she indicated was that this, the word this, meaning the matter of the allegations underlying the O'Malley lawsuit came to light. Well, I think opposing counsel would acknowledge that the fact that there was a federal lawsuit filed was true. And depending on its actual allegations, the chief commenting on what's actually there accurately wouldn't necessarily be a problem. Their point seems to be more subtle, as I perceive it, that the chief sort of extrapolated, mischaracterized the allegations because they weren't really child pornography. And he used, as you alluded to, the buzzword today, child pornography. So what's your response to the chief mischaracterizing it, A, and B, did it involve allegations that could be construed as child pornography? Let me first, Your Honor, give you the inside the record answer. That was not, that point that opposing counsel is making in oral argument is indeed subtle because it wasn't pleaded. They never alleged that the O'Malley lawsuit did or did not contain allegations. And you'll look at appendix page 11, which is count two defamation per se. It's a different lawsuit. If they had alleged in the complaint that nowhere did the O'Malley lawsuit say anything about 16-year-old girls and sex. You know, now we play hindsight, Your Honor. I would have gone 2619 instead of 2615. But they said they didn't raise that. They did not raise that, and the complaint does not. It doesn't say that contrary to Sheehan's characterization, O'Malley didn't say anything about young children in his lawsuit. The lawsuit talks about, you know, Mucha stealing O'Malley's identity and ordering porno. Horrible stuff. And now I'm speaking outside the record, Your Honor, based on my recollection. And that one of the allegations said 16-year-old girl, Brazilian girl. It wasn't a lawsuit, a 16-year-old Brazilian girl. Absolutely. It was or was not. It was. Okay. And that, by the way, that is nowhere in our record. That is correct. That is nowhere in the record because it was not made part of the complaint. And that was, and the matter was dismissed on a 215 based on these allegations. So I think for purposes of this appeal, plaintiff did not challenge Sheehan's characterization of the O'Malley allegations as the child pornography. So when you look at it in the context, I think a reasonable interpretation is Sheehan saying I've got all these problems with Mucha. I'm trying to fire him. There's these lawsuits going on. Now this one drops out of the sky on my desk. I turn it over to the state's attorney, let them handle it because there's a grand jury pending. Was it a fair characterization, though, of child pornography in the lawsuit? Aside from whether it's in the record or not, is it a fair characterization? In the O'Malley complaint? Yeah. Yes. Why? Because it was speaking in terms of 16-year-old girl, hot poses, you know, Brazilian. That was in the lawsuit? Yeah. Okay. Yes, Your Honor. I mean, if the court feels it necessary to supplement the record on that, I mean, it's a public record. Well, and again, I mean. Well, the dilemma is. I'm sorry. It's yours, the record. I mean, the opposing counsel raised it, so we're asking you to respect. I mean, whether or not it's in the record is for us to decide. I think the, I think the, where plaintiff's argument falls on this point is that the, the, the allegation underlying Sheehan's comment was never, first of all, pleaded, not attached to the complaint, and, and not attacked as saying the O'Malley allegation, which may be privileged because it's a pleading, was nevertheless completely false. Now, what went on in the civil litigation, of course, in the O'Malley case is either here or there, because you've got to look at what he said in the context. Of course, context has a temporal implication. What did he know at the time? So I think Judge Wheaton got it right when saying that Sheehan referenced when this came to light, he was referring to a new lawsuit involving a problem police officer. And I got this. I mean, essentially, anybody who's got, you know, involved in law enforcement says, like, this is a hot potato. More than happy to give this one to the state's attorney to investigate, because I've got plenty of my claim with him. So I think that, I think that given, given the nature of the news article, all that was swirling around, a reference to a third-party lawsuit, the absence of allegations challenging the veracity of the underlying lawsuit, providing the trial judge with any, with any context from the plaintiff point of view, that the judge acted properly in dismissing the count two defamation. Keep in mind, Your Honor, that, and I want to talk about this kind of jurisdictional point at the end, because I'm drawing to a close. Keep in mind that plaintiff had the opportunity to amend, because you recall initially this count three invasion of privacy was stricter. Plaintiff, I mean, Judge Wheaton was certainly not denying plaintiff the opportunity on the defamation claim to flesh it out. Add the allegations attached to federal complaint to this today. And plaintiff elected to stand on these allegations, paragraphs 44 through 52 of the, of the complaint. And it is a reasonable interpretation of that article that the chief was just saying, this thing came out of, came out of the sky. I have to deal with it. And the way I dealt with it was giving it to the state's attorney, not himself saying that Mr. Mucho was guilty of child pornography. It's, I mean, this happens not infrequently when police officers are charged with misconduct. There's, you know, I've received the allegation that a police officer was engaged in a drunken driving accident. I'm, I'm here that, you know, my, one of my officers was accused of this, accused of that. I'm going to turn this man over to the state's attorney. That, I mean, that happens where police, where police chiefs comment on allegations against their officers. They're not endorsing them. They're not saying he is guilty of child pornography. They're saying this happened. I'm a law enforcement person. I have to do something with it. And in this case, I turn it to the third party agency. I think that is a reasonable construction of this article in terms of, in terms of the entire context of the Mucho matter. We didn't talk about this count three business, invasion of privacy. And here's what happened. Count three invasion of privacy involving pictures of Mr. Mucho and his ex-wife. That was stricken. Judge Wheaton said, you know, this false light is a tricky one. I don't think you got it right the first time. You can amend. So he did. And I believe, I believe the law is that when somebody files an amended complaint that doesn't reference the original one, it's gone. So when count two got dismissed with prejudice, where plaintiffs did stand on that, count three, the administrative review, Judge Wheaton ruled for the board, affirmed the board's decision. We're doing the order. And at that point, what's going on with your amended count three? Because, Jerry, you don't have, you can't take this up. Well, I'm going to withdraw count three. That's what happened. Plaintiffs did not make an election to go before Judge Wheaton that says, Your Honor, I reconsidered my amended complaint, and rather than proceeding on my amended complaint, I'm electing to resurrect the original complaint and asking you to dismiss that with prejudice. So if, Your Honor, I haven't really thought this out too well, but if count three is alive, we're not here. Right. Because there's been no 304 filing. So plaintiff has a, either count three is gone by his lack of an election to stand on the previously dismissed count three, or if that's the case, then I would ask this court to dismiss this appeal on the basis that there is no finality as to the entire case and no special 304 finding. Any other questions? Thank you very much, Your Honor.  Thank you. Mr. O'Keefe? Yes, please. You may proceed when you're ready. Just procedurally really quick, what happened was we did count two first defamation. Judge Wheaton dismissed it. I filed a motion to reconsider. She denied it. That was it for count two. We moved to count one, administrative review. She denied it. I did, based upon the dismissal of the count three, intrusions, seclusion of another, they alleged that I should have added the word highly offensive as opposed to offensive, which I did in the amended count three, and then Judge Wheaton on that final day said, well, if you want a final order, you have to withdraw that amended count three, withdraw your complaint, and then the order says this is a final order. I basically stood on the pleading from when she dismissed it because their complaint or their motion was you have an insufficient pleading. Well, that's the issue. If you stand on the amended, if the original one complaint count is dismissed, you file an amended count, then it's withdrawn. Haven't you abandoned your original complaint? I withdrew the amended complaint. In other words, it was never filed, so I'm standing on the original complaint with the original allegations, basically standing on the pleadings of count three, and that's the way we understood it at that time for Judge Wheaton to give us a final order to take up. Did she make any findings that this was a final? Yes. She made three or four findings? Yes. Well, if you look at... She said she didn't make three or four findings. The order says this is a final order. But it doesn't reflect that in order to get there, you represented you were standing on your original pleading. That did not say it said withdrew the complaint. I did in my reply brief submitted to the court a case which held that you don't have to verbally say I'm standing on the complaint because this issue was brought up in the briefings, and I did provide that case to the court. Going back just quickly on this supposed lie, again, I would emphasize that there was... Randy Mucin never denied he was Linda Lucinda, and if the questioning would have kept going at the hearing, here's your document that you've never seen before, take your time, read it, and tell me if it's accurate, he says yes, he did it in the second hearing. When he had time to review it, he reviewed it. Everything is accurate. So the signature, although his attorney probably shouldn't have just sent him the signature pages, should have sent him the whole document and said review it and sign it, Mucin not for a second has ever contested or denied that it's inaccurate or untruthful. So other than the deposition where Mucin was the one that voluntarily comes out and says I'm Linda Lucinda. Now, I think it's important that there is nothing put in the record by Sheehan as to the circumstances of the first deposition because I think there is evidence in the record that Randy was the webmaster. Randy worked child pornography investigations on the computer to lure predators. Randy had hundreds of email names. So when somebody says to him, did you ever use Linda Lucinda? It's like, I don't know, I don't think so, until he goes back and looks in his records. And, again, also this is not in the record because Sheehan chose not to put it in the record. Linda Lucinda was never alleged in the civil lawsuit. There was never an allegation according to Randy in the civil lawsuit that he did anything wrong with Linda Lucinda email. It was just not in there, which is even more of a surprise he's being questioned about it at an administrative hearing. And I think that those issues are important to determine whether or not the finding that Randy committed perjury is against the manifest way to the evidence because the burden is still upon the chief to prove that he committed perjury because that's why they fired him. And then the issue becomes, I've had this come up, I've made the fundamental fairness argument that if, and Mr. Murphy even admitted it, he said, okay, we've got this guy lying, so let's take this misconduct and we're going to come in from the side on this April 23rd hearing. Even though we think he's lying, we're not going to charge it, but we're going to do a sneak attack and question about it. Why wasn't that brought up in the first set of charges? And in this case, the commission listened to the testimony and apparently didn't think much about it because they didn't terminate Randy at the first hearing. It wasn't an allegation at the first hearing, is it? It was not an allegation at the first hearing, not at all. So that's why I think that the manifest way is kind of a two-pronged. It's fundamentally unfair to bring stuff up that you knew about and surprise the person. And then secondly, there's no evidence that he intentionally lied or committed perjury according to the commission. Thank you. Thank you very much. We'll be at recess. Thank you.